IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CR-57-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v.  ) | **ORDER** |
| ) | |
| MARVIN PERNELL ADAMS, JR.,  ) | |
| ) | |
| Defendant.  ) | |

On May 15, 2020, Marvin Pernell Adams, Jr. ("Adams" or "defendant") requested appointment of counsel for purposes of compassionate release. See [D.E. 176]; see also [D.E. 178]. Between August 11, 2020, and January 20, 2021, Adams sent the court four letters inquiring about his motion for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582). See [D.E. 181, 182, 184, 185]. On February 5, 2021, Adams moved pro se to supplement his motion for compassionate release [D.E. 186]. On February 9, 2021, Adams moved pro se to supplement his motion and filed exhibits in support [D.E. 188]. On March 3, 2021, Adams, through counsel, moved for compassionate release and filed a memorandum and exhibits in support [D.E. 190, 191]. On March 17, 2021, the government responded in opposition [D.E. 195]. As explained below, the court denies Adams's motion.

I.

On August 21, 2017, with a written plea agreement, Adams pleaded guilty to conspiracy to distribute and possession with intent to distribute 100 grams or more of heroin and 40 grams or more of fentanyl. See [D.E. 1, 63, 64]. On October 3, 2018, the court held a sentencing hearing and

adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 154-56]. The court calculated Adams's total offense level to be 34, his criminal history category to be V, and his advisory guideline range to be 235 to 293 months' imprisonment. See [D.E. 156] 1. After granting the government's motion for downward departure and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Adams to 180 months' imprisonment. See [D.E. 155] 2; [D.E. 156] 2. Adams did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's

2

application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the

---

    (C) Family Circumstances.—

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

[BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Adams requests that the court waive section 3582's exhaustion requirement. See [D.E. 190] 3–4. The government has not invoked section 3582's exhaustion requirement. [D.E. 195]; see United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Adams's claim on the merits.

Adams seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Adams cites the COVID-19 pandemic, his age (52), and his race. He also cites his history of stomach cancer, gastrectomy, surgery to remove a nodule, folic acid deficiency anemia, low red blood cell count, lung problem, decreased bone density on vertebrae, weak immune system, vitamin D deficiency, chronic back pain, depression, auditory hallucinations, and racing thoughts. See [D.E. 182] 1–2; [D.E. 182-3]; [D.E. 182-5]; [D.E. 189] 3; [D.E. 190] 2, 5–7; [D.E. 191]; [D.E. 194].

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

Adams also cites the conditions at FCI Loretto, his rehabilitation efforts, and his family support. See [D.E. 188]; [D.E. 188-1]; [D.E. 189] 1; [D.E. 190] 6–8; [D.E. 194].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Adams states that he has a history of stomach cancer, gastrectomy, and surgery to remove a nodule, and currently suffers from folic acid deficiency anemia, low red blood cell count, a mass on his lung, decreased bone density on vertebrae, weak immune system, vitamin D deficiency, chronic back pain, depression, auditory hallucinations, and racing thoughts, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Adams serves his sentence. Moreover, Adams was offered the COVID-19 vaccine but refused it, thereby severely undermining his argument about an alleged fear of medical risks due to COVID-19. See [D.E. 195] 20–21; [D.E. 196]. Accordingly, reducing Adams's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Adams's medical history and conditions, rehabilitation efforts, and family support are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Adams's sentence. See High, 2021 WL 1823289, at *4–7; Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

6

Adams is 52 years old and engaged in serious criminal conduct in 2016 and 2017. See PSR ¶¶ 12–20. As a leader in a drug trafficking conspiracy, Adams is accountable for 1.01 kilograms of heroin, 64 grams of cocaine base (crack), 7.94 kilograms of cocaine, and 253.6 grams of a mixture containing fentanyl. See id. Adams also possessed firearms and maintained a premises for the purpose of distributing a controlled substance. See id. Moreover, Adams is a violent recidivist with state and federal convictions for unlawful brandishing of a firearm, unlawful assault, possession of cocaine with intent to distribute (three counts), robbery, eluding police, driving while license suspended, reckless driving, hit and run, driving while intoxicated, and conspiracy to possess with intent to distribute and to distribute heroin and crack. See id. ¶¶ 25–33. After serving a 10-year federal sentence for conspiracy to possess with intent to distribute and to distribute heroin and crack, Adams continued to traffic illegal narcotics, including the present offense. See id. ¶¶ 31–33. Clearly, Adams learned nothing from his first trip to federal prison. Furthermore, Adams has performed poorly on state probation, incurred sanctions in prison. and violated his federal supervised release. See id. ¶¶ 25–33. Nonetheless, Adams has taken some positive steps while incarcerated. See [D.E. 188]; [D.E. 188-1]; [D.E. 189] 1; [D.E. 190] 7–8; [D.E. 194].

The court has considered Adams's exposure to COVID-19, his vaccine refusal, his medical history and conditions, his rehabilitation efforts, and his family support. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to vaccinate Adams, the section 3553(a) factors, Adam's criminal history, Adams's arguments, the government's persuasive response, and the need to punish Adams for his serious criminal behavior, to incapacitate Adams, to promote respect for the law, to deter others, and to protect society, the court declines to

7

grant Adams's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Adams's request for home confinement, Adams seeks relief under the CARES Act. See [D.E. 182]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Adams's request for home confinement.

II.

In sum, the court DENIES Adams's motions for compassionate release [D.E. 186, 188, 190], DISMISSES Adams's request for home confinement, and GRANTS Adams's motion to seal [D.E. 193].

SO ORDERED. This 13 day of May 2021.

JAMES C. DEVER III
United States District Judge